Mary C. Geddes
Assistant Federal Defender
Averil Lerman
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LANCE D. LINTON, SR.,<br><br>    Petitioner,<br><br>vs.<br><br>FRANK LUNA, et al.,<br><br>    Respondents. | Case No. 3:07-cv-0051-RRB-DMS<br><br>**AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

    Lance D. Linton amends his 28 U.S.C. § 2254 "Petition for Writ of Habeas Corpus" to state the following claims:

### CONVICTION AND CUSTODY

    Nine years after the disappearance of his ex-wife Elfriede, Lance Linton was charged with her murder.  The main evidence against Linton was the discovery of a partial skull on Linton's land, which appeared to be Elfriede's cranium, and a statement allegedly made by Linton's deceased father, John Linton, that incriminated Lance Linton in the alleged murder of Elfriede and incriminated both Lance and John Linton in the disposal of

her remains. The person who reported these alleged statements was John's close friend, Steven Pieroni, a multiple felon and convicted sex offender. Steven Pieroni first reported the alleged statements to the police just following Pieroni's arrest on new felony charges involving allegations of pull-tab fraud. His co-defendant in that case was Lance Linton.

Lance Linton was charged with the first-degree murder of Elfriede Linton in *State v. Linton*, 4FA-S91-3388. Linton was convicted of murder after a jury trial in 1992 in Fairbanks, Alaska, in the Alaska Superior Court. A "Judgment of Conviction and Order of Commitment/Probation" was issued on February 22, 1993, by Alaska Superior Court Judge Niesje Steinkruger. Lance Linton was sentenced to serve a term of 75 years, with 10 years suspended, and with a period of five years probation following release from prison. The State of Alaska has chosen to incarcerate Mr. Linton in Red Rock Correctional Center in Eloy, Arizona.

## CLAIMS FOR RELIEF

**Ground One**

Lance Linton's conviction was obtained in violation of the right to confront and cross-examine witnesses set out in the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The Alaska Court of Appeals correctly identified

*Ohio v. Roberts*,[1] as the governing United States Supreme Court authority, but misapplied the law to the facts of Linton's case.

Over the objection of Linton, the trial court admitted Steven Pieroni's testimony about statements allegedly made by John Linton, Lance's father. According to Steven Pieroni, John Linton had spoken to Pieroni in 1989, a few months before John died of a heart attack.

According to Pieroni, John Linton had told him the following things during a very brief conversation on the morning after a drunken night:

- that Lance Linton had told John Linton that Lance had killed Elfriede by putting poison in her milk or her tea;

- that Lance Linton had asked John Linton for the use of John's large van in order to dispose of Elfriede's body;

- that Lance Linton had asked John Linton to assist him in lifting Elfriede's body into the van;

- that John Linton had assisted Lance Linton in loading a person wrapped in a covering into the van, seeing an arm come out of the covering; and

- that Lance Linton had said he was going to bury Elfriede.

---

[1] *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980). *Ohio v. Roberts* was reversed in part by *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). For the purpose of this case, however, the question before the habeas court is whether or not the state court's decision contravenes "the governing legal principle or principles set forth by the Supreme Court at the time the [lower] court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). *See also Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), and *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 2147 (2004).

The trial court permitted admission of these statements on the basis that (1) John Linton's alleged statements were admissible hearsay under the "against penal interest" exception to the Alaska hearsay rule, and (2) that their admission did not contravene the Confrontation Clause set out in the Sixth Amendment to the United States Constitution because the totality of circumstances connected with the uttering of the alleged statements indicated that they were clearly reliable and trustworthy.

Linton asserts that the Alaska Court of Appeals failed to correctly apply *Ohio v. Roberts* in holding that John Linton's alleged statements to Steven Pieroni were admissible because they possessed adequate "indicia of reliability" and "particularized guarantees of trustworthiness." In the alleged statement, John Linton painted himself as Lance's accomplice, after the fact, to the murder of Elfriede, and described himself as an accomplice to the disposition of Elfriede's remains. To the extent that John described himself as innocent of the murder, but identified Lance as guilty of the murder, John's statement was self-exculpatory, and incriminated another for the serious crime. Such statements are "inevitably suspect," *Bruton v. United States*, 391 U.S. 123, 136, 88 S. Ct. 1620, 1628, 20 L. Ed. 2d 476 (1968), and are presumptively unreliable. *Lee v. Illinois*, 476 U.S. 530, 545, 106 S. Ct. 2056, 2064, 90 L. Ed. 2d 514 (1986).

Further, the court of appeals failed to take into account numerous facts and circumstances surrounding the making of the statement in finding that John was particularly worthy of belief, in disregard of the directives in *Idaho v. Wright*, 497 U.S. 805, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). A thorough consideration of the facts presented to the trial court would have required the conclusion that the statement allegedly

made by John Linton was neither reliable nor trustworthy, and that his alleged statement was certainly not marked by "particularized guarantees" of trustworthiness.

John Linton's trustworthiness and reliability were called into question by many things, one of which was the fact that John Linton had chosen Steven Pieroni as a close friend. Steven Pieroni had been convicted of at least two felony sex crimes (sodomy and child enticement), and other crimes as well. Steven Pieroni admitted to lying to the police and lying to other officials. Two of Pieroni's own sisters described him as a skillful liar. Pieroni himself testified that he had engaged in the pull-tab fraud crime (facing certain presumptive sentencing) for the sole purpose of ensuring that Lance Linton was caught in a crime by the authorities, in order to discredit Linton. Pieroni's testimony, and the testimony of others, paints Pieroni as a man of very low character who is willing to lie to authorities, to engage in elaborate schemes, and to commit felony crimes in order to advance his own interests. The fact that John Linton had chosen Steven Pieroni as his close friend, his sometime lover, and his roommate does not recommend John Linton's character for veracity or trustworthiness.

Further, others testified that John Linton was not unusually trustworthy. Among these was James Northrup, Pieroni's probation officer, who had repeated contact with John Linton, and stated that Linton was not always truthful.

In addition, other facts, not mentioned in the court of appeals' opinions, contradicted the court's finding that John's alleged statements possessed particularized guarantees of trustworthiness. John Linton was an alcoholic. The statement he allegedly made in 1989 was made after a long night of alcohol consumption. John was suffering from an emotional disorder or disorders, and had suffered an apparent stroke in 1984.

John's alleged statement to Pieroni was in direct conflict with a written note that he had given to Lance, a note in which John had said that Elfriede had left town with a visitor. John himself had a strong dislike for Elfriede, and made that known. All of these facts, as well as others to be identified, controvert the trial court's finding of "particularized guarantees of trustworthiness" that was required to admit the unconfronted admission of John Linton's allegations.

**Ground Two**

The Alaska Court of Appeals failed to properly protect Lance Linton's right to a fair trial under the Due Process and Confrontation Clauses embodied in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when it refused to require the trial court to apply the reasoning of *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994), to the *Linton* case, and found instead that Linton had no right to complain about the trial court's refusal to exclude at least parts of John Linton's alleged statement. The appellate court also erred in concluding that the entirety of John's alleged statement would have been admitted even if the *Williamson* approach had been applied, and that full consideration of the matter was not "critical to a proper and just decision" in the *Linton* appeal.

Lance Linton could not have been convicted of the murder of Elfriede Linton without the admission of the statement allegedly made by John Linton. Admission of that statement, without the opportunity for confrontation, rendered Lance Linton's trial fundamentally unfair, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. "[A] right of confrontation is 'implicit in the concept of ordered liberty,'" *Palko v. State of Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82

L. Ed. 288 (1937), *overruled in part, Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The centrality of the right of confrontation to a fair trial was described at length in *Pointer v. Texas*, 380 U.S. 400, 404-05, 85 S. Ct. 1065, 1068-69, 13 L. Ed. 2d 923 (1965). Under the facts and circumstances of this case, admission of that statement, without the opportunity for confrontation, violated the guarantee of a fair trial. *See, e.g., Parker v. Gladden*, 385 U.S. 363, 364-65, 87 S. Ct. 468, 470, 17 L. Ed. 420 (1966) (bailiff's comments to at least two jurors deprived defendant of Due Process right to confront and cross-examine opposing witnesses). "[D]ue process requires as a minimum that an accused be given a public trial after reasonable notice of the charges, have a right to examine witnesses against him, call witnesses on his own behalf, and be represented by counsel.'" *In re Murchison*, 349 U.S. 133, 134, 75 S. Ct. 623, 624, 99 L. Ed. 942 (1955). The unfairness of the court's action was furthered by the fact that Linton was deprived of the opportunity to put forward relevant information regarding the character and motivations of both John Linton and Steven Pieroni at trial.

**Ground Three**

Lance Linton was coerced by his trial attorney into waiving his right to testify, in violation of his right to effective assistance of counsel as provided by the Sixth Amendment to the United States Constitution, and in violation of his right to give evidence in his own defense under the Due Process clause of the Fifth Amendment to the United States Constitution. Linton asserted that Mr. Traverso had told him that he would get no support from Mr. Traverso if Linton testified at the trial. Mr. Linton wanted to testify in order to submit proof that Elfriede Linton had been alive in 1983, and had not died in 1982, as the state had charged. He had a "statutory warranty deed" from the state of Washington

which Elfriede had signed in 1983. The Alaska Court of Appeals erred in upholding the trial court's conclusion that Linton had not been coerced by his trial attorney.

# LANCE LINTON HAS EXHAUSTED STATE REMEDIES

**Introduction**

Review of the state proceedings establishes that Lance Linton has exhausted Alaska state remedies in attempting to obtain relief under the United States Constitution. The conviction has raised substantive concerns throughout the litigation. The Alaska Supreme Court denied Linton's petition for hearing, over the dissent of Justice Rabinowitz. Mr. Linton's post-conviction case was dismissed three times by the post-conviction court, and reinstated three times by the Alaska Court of Appeals, before relief was denied on the merits. A review of the history establishes that Linton has satisfied the exhaustion requirement.

**Trial**

Linton was tried in Fairbanks, Alaska, in September 1992. He was convicted of Murder in the First Degree. At trial, Steven Pieroni testified about the statements allegedly made by Lance's deceased father, John, over Linton's continuing objection.

**Direct Appeal**

Linton filed a direct appeal from his conviction with the Alaska Court of Appeals, *Linton v. State*, A-4834, in 1993. The court of appeals issued its initial decision on August 26, 1994, published at 880 P.2d 123 (Alaska App. 1994).

On June 27, 1994, the United States Supreme Court issued its decision in *Williamson v. United States*, 512 U.S. 594, 114 S. Ct. 476, 129 L. Ed. 2d 476 (1994). There, the Supreme Court held that admission of hearsay statements under Federal Rule

of Evidence 804(b)(3) (the federal rule permitting a hearsay exception for statements against penal interest) required that the trial court limit admission to those parts of the statement that truly are against the declarant's penal interest, and not admit the parts of the statement that might have been in furtherance of the declarant's interests.

Linton filed a Petition for Rehearing in the Alaska Court of Appeals, requesting that the court reconsider the direct appeal opinion in light of the *Williamson* decision, and specifically consider whether or not the equivalent state rule of evidence (Alaska Rule of Evidence 804(b)(3)) be interpreted in the same manner that the *Williamson* court had interpreted the federal rule.

After the filing of supplemental briefs by each party, the Alaska Court of Appeals issued a second decision in the case, affirming its initial decision. *State v. Linton*, 901 P.2d 439 (Alaska App. 1995).[2]

**Petition for Hearing**

On August 28, 1995, Linton filed a "Petition for Discretionary Review" in the Alaska Supreme Court from the final decision issued by the Alaska Court of Appeals, captioned *Linton v. State*, S-7294. He asserted that the appellate court's decision on the admission of the alleged John Linton statement contravened and misapplied the United States Supreme Court's decisions in *Ohio v. Roberts, supra*, and the principles underlying the holding of *Williamson v. United States, supra*. He asserted that the appellate court's decision had been an unreasonable application of federal law to the facts of the case, and that the court's decision had failed to conform with guiding Supreme Court precedent.

---

[2] This decision was issued on August 11, 1995.

Over the dissent of Justice Rabinowitz, the Alaska Supreme Court denied Linton's petition. (J. Moore not participating.) "Order," February 28, 1995.

Linton filed a Petition for Writ of Certiorari in the United States Supreme Court, including in his petition the assertion that the trial court had violated his right to confrontation under the Federal Constitution. The petition was denied by the Supreme Court on May 13, 1996. *Linton v. Alaska*, 517 U.S. 1197, 116 S. Ct. 1693, 134 L. Ed. 2d 793 (1996). Linton's conviction became final on May 13, 1996, the day on which his petition for writ of certiorari was denied by the Supreme Court.

**State Post-Conviction Proceedings and Appeals Therefrom**

On January 6, 1997, Linton mailed an Application for Post-Conviction Relief to the Alaska courts. *Linton v. State*, 4FA-153 Civil.[3] Linton asserted, among other things, that he had been deprived of effective assistance of counsel by his trial attorneys. He asserted that he had been coerced by them into giving up his right to testify on his own behalf. Linton represented himself in his post-conviction case.

The Fairbanks post-conviction court dismissed Linton's post-conviction case on the basis that Linton had failed to present a *prima facie* case warranting relief.

Linton filed an appeal of the dismissal to the Alaska Court of Appeals. *Linton v. State*, A-6683. The Alaska Court of Appeals vacated the lower court's dismissal of the post-conviction case, and ordered that further proceedings occur. *Linton v. State*, 1999 WL 91828 (issued February 24, 1999).

---

[3] Linton had also filed substantive pleadings seeking post-conviction relief from his conviction in May 1996 and in October 1996. Linton's post-conviction case was certainly properly filed on or before January 30, 1997, probably well before that date.

Following the remand, the post-conviction court conducted further proceedings in Linton's case, and then again dismissed Linton's post-conviction case. Linton filed another appeal, *Linton v. State*, A-7603. The Alaska Court of Appeals reversed the dismissal of Linton's post-conviction case, and reinstated it, ordering that further proceedings continue. *Linton v. State*, 27 P.3d 782 (Alaska App. 2001).

Following the second remand, the post-conviction court again conducted further proceedings, and then again dismissed Linton's case. The court held that "Linton had failed to plead a *prima facie* case of ineffective assistance or, in the alternative, that the State was entitled to judgment as a mater of law on the established facts." *Linton v. State*, 2004 WL 595606 (Alaska App. 2004).

Linton filed a third dismissal appeal to the Alaska Court of Appeals. *Linton v. State*, A-8503. That court reversed the post-conviction court's dismissal of Linton's claim that he had been coerced by his trial attorney into waiving his right to testify. *Linton v. State*, 2004 WL 595606 (Alaska App. 2004). The court affirmed the dismissal of Linton's other ineffectiveness claims. *Id.*

Following the third remand, the post-conviction court held an evidentiary hearing on whether or not Linton's trial attorney, Nelson Traverso, had coerced Linton into waiving his right to testify. The court found against Linton, and denied Linton's application for post-conviction relief. *Linton v. State*, 2006 WL 2458572 (Alaska App. 2006).

Linton filed a fourth post-conviction appeal to the Alaska Court of Appeals. *Linton v. State*, A-9213. The appellate court affirmed the post-conviction court. *Linton v. State*, 2006 WL 2458572 (Alaska App. 2006), issued on August 23, 2006.

Linton filed a petition for hearing with the Alaska Supreme Court from the 2006 decision of the Alaska Court of Appeals. *Linton v. State*, S-12443, filed August 29, 2006. The Alaska Supreme Court denied Linton's petition on December 7, 2006.

**Prior Habeas Filing, Voluntarily Dismissed without Prejudice to Permit Exhaustion of State Claims**

On November 16, 1995, Linton filed a federal habeas corpus action, captioned *Linton v. Crandell*, A96-197 CV. On September 19, 1996, Linton filed a notice of voluntary dismissal without prejudice to permit himself time to exhaust state remedies.

**Timely Filing of this Habeas Petition**

On February 27, 2007, Linton timely filed this petition for writ of habeas corpus with this honorable court.

## STATEMENT OF RELIEF SOUGHT

Accordingly, Lance Linton petitions this court for a writ of habeas corpus.

Dated this 18th day of July, 2007.

    Respectfully submitted,

    FEDERAL PUBLIC DEFENDER
    FOR THE DISTRICT OF ALASKA

    /s/ Mary C. Geddes
    Assistant Federal Defender
    Alaska Bar No. 8511157
    /s/ Averil Lerman
    Staff Attorney
    Alaska Bar No. 8309092
    601 West 5th Avenue, Suite 800
    Anchorage, AK  99501
    Ph:  (907) 646-3400
    Fax:  (907) 646-3480
    mary_geddes@fd.org
    averil_lerman@fd.org

<u>Certification</u>:

I certify that on July 18, 2007, a copy of the foregoing document, with attachments, was served electronically on:

Kenneth M. Rosenstein, Esq.

/s/ Averil Lerman