Kenneth M. Rosenstein
Assistant Attorney General
Office of Special Prosecutions and Appeals
310 K Street, Suite 308
Anchorage, Alaska 99501
Telephone: (907) 269-6250
Email: ken.rosenstein@alaska.gov

Attorney for Respondents

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| LANCE D. LINTON, SR.,<br><br>    Petitioner,<br><br>  vs.<br><br>FRANK LUNA, et al.,<br><br>    Respondents. | Case No. 3:07-cv-51-RRB-DMS<br><br>CORRECTED[1]<br>MOTION TO DISMISS<br>(Failure to Exhaust State Remedies) |

    Linton's habeas claim is that the admission at his state trial of John Linton's out-of-court statement violated the Confrontation Clause because it lacked sufficient trustworthiness. The respondents ask that Linton's habeas claim be dismissed because he failed to properly exhaust the claim in state court. Specifically, the respondents argue that in asserting his confrontation claim,

---

[1]   The only changes that have been made are the citations to the state court record, which now refer to the documents lodged at Docket 77 and Docket 122.

Linton did not fairly present to any Alaska court the factual bases he relies on to support his remaining habeas claim.

This respondents' motion is divided into three sections. The first discusses the habeas doctrine of exhaustion of state remedies. The second section compares the factual support Linton has used in arguing the merits of his habeas claim with the factual support he relied on in the state courts. And the third section argues that in pressing his confrontation claim in the state courts, Linton did not fairly present to those courts the factual bases for his claim that he is now relying on in this court and, therefore, he did not properly exhaust his state remedies.

A.  Exhaustion principles

Before a defendant can obtain federal habeas review of his state-court conviction, the defendant must exhaust his available state remedies. *Galvan v. Alaska, Dep't of Corrections*, 397 F.3d 1198, 1202 (9th Cir. 2005) (citing 28 U.S.C. § 2254(b)(1) (federal court may not grant habeas relief unless defendant "has exhausted the remedies available in the courts of the State")). Exhaustion reflects a policy of federal-state comity requiring that state courts have "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 835 (1999), *quoted in Galvan*, 397 F.3d at 1202. To satisfy the

exhaustion requirement and give the state that necessary full and fair opportunity to consider and correct purported federal violations, a defendant "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). *Galvan* stated this requirement succinctly: "If a party wants a state court to decide whether she was deprived of a federal constitutional right, she has to say so. It has to be clear from the petition filed at each level of the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition." *Galvan*, 397 F.3d at 1204.

The exhaustion requirement applies not only to the specific federal-law basis of a claim but also to the factual support necessary to prove the claim: to properly exhaust a federal claim in state court, the claim "must include a reference [in state court] to a specific federal constitutional guarantee, *as well as a statement of the facts that entitle the petitioner to relief." See Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citing *Picard v. Connor*, 404 U.S. 270, 277 (1971)) (emphasis added). A federal habeas court thus "*must not hear factual allegations that were not before the state courts.*" *Hudson v. Rushen*, 686 F.2d 826, 830 (9th Cir. 1982) (emphasis added). Stated differently, a defendant must "present[] the state courts with *all* the operative facts giving rise to the asserted

3

constitutional principle." *Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994) (internal quotation marks and citation omitted) (emphasis added). (That *Hudson* and *Chacon* predate the enactment of the Anti-terrorism and Effective Death Penalty Act does not diminish their binding principles because the act did nothing to alter the exhaustion requirement.)

Finally, a petitioner cannot meet § 2254's exhaustion requirement simply by foisting on a state appellate court the task of combing the state court record for the argument, case citation, or evidence that purports to have fairly presented the federal constitutional issue to the state court. *Reese*, 541 U.S. at 31. To require otherwise would mean that state appellate judges "*must* [either] read the lower court opinions . . . [or] forfeit the State's opportunity to decide that federal claim in the first instance." *Id*. A defendant "wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief." *Id*. at 32. The Ninth Circuit cogently restated the exhaustion requirement in light of *Reese*. A state appellate court "[i]s not required to review the parties' trial court pleadings *to see if it could discover for itself* a federal constitutional claim. To exhaust his claim, [a petitioner] must have presented his federal, constitutional issue before the [state appellate court] *within the four corners of his appellate briefing*." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005) (emphasis added). (The state acknowledges that *Reese* and *Castillo* were discussing the presentation in state court of a federal legal

4

claim, their guiding principles apply with equal force to the facts supporting that claim.)

Applying these principles to Linton's confrontation claim, he did not fulfill his obligation to exhaust his state remedies because he did not fairly present to the Alaska courts the factual basis supporting his legal claim that he relies on in this court as support for his habeas claim.

B. <u>Linton did not present to the Alaska courts the same factual support for his confrontation claim that he has relied on in this case</u>

At the outset, the respondents need to make clear that they do not assert that Linton's habeas claim relies on newly discovered evidence or evidence that was available for, but not presented at, his trial. On the contrary, the evidence he relies on in this court is well-documented with citations to the trial record. The respondents are asserting that, despite having presented at trial the evidence he is relying on in this court, Linton did not rely on that evidence in presenting his confrontation claim in the state courts, particularly the Alaska Court of Appeals, relying instead on a *different factual basis*. In other words, Linton's argument on the merits of his federal habeas claim is the first time that he has attempted to marry the specific record evidence he relies on making that argument to his confrontation claim. This becomes apparent when comparing his

presentation of the claim in Alaska's appellate courts with his presentation in this court.

The gist of Linton's habeas claim is that the Alaska Court of Appeals's conclusion that his father John Linton's statement bore particularized guarantees of trustworthiness is (1) "an objectively unreasonable determination of the facts, in light of the evidence that had been presented to the trial court" and (2) an unreasonable application of federal law because the court of appeals "did not actually" consider the totality of circumstances as required by federal law. [Docket 123 at 35 (citing 28 U.S.C. § 2254(d)); *see also* Docket 25 at 2-6]

In support of those assertions, Linton outlines the various facts from the trial record that he claims the Alaska Court of Appeals ignored or unreasonably determined in concluding that John's statement was trustworthy:

1. Linton asserts that the court of appeals "ignore[d] the most salient feature of John Linton's alleged statement . . . it was the statement of an accomplice who exculpates himself for a murder, while blaming another for it, and incriminates himself only on a minor charge." [Docket 123 at 37] But Linton did not fairly present this argument to the Alaska courts. Linton's argument in the court of appeals was that John's "statement was *not* against his penal interests" [Docket 77, Tab 35 at 13 (emphasis added)] because John never faced any realistic risk of prosecution, which meant that his statement "loses any presumption of trustworthiness" [*Id*. at 20; Docket 77, Tab 37 at 1 (John's

6

"statement still fails to come within the exception as a statement against interest."), 5]. Linton continued to press this same argument in his petition for discretionary review filed in the Alaska Supreme Court. [*See* Docket 77, Tab 44 at 5-8] The proposition that Linton now asserts – that John's statement was untrustworthy because he was exculpating himself as an accomplice to Elfriede's murder – is thus the diametric opposite of the position he asserted in the Alaska appellate courts that John's statement had not been against his penal interest (even though Linton's defense at trial was the John had killed Elfriede) [*see* Docket 77, Tab 35 at 20-25; Docket 77, Tab 37 at 1-2; Docket 77, Tab 44 at 5-8].

2. Linton also challenges the Alaska Court of Appeals's determination that the trial record contained no basis for believing that John would falsely accuse Linton because the record established that they had a "'close and harmonious relationship.'" [Docket 123 at 38-39 (quoting *Linton*, 880 P.2d at 129)] Linton asserts that this determination "conflicts with the trial transcripts," citing Pieroni's testimony that John was hostile to and feared Linton and that John "had been coerced by Lance about where he had to live." [*Id.* at 39 (citing Docket 77, Tab 20 at 875; Docket 77, Tab 21 at 957-58)]

But Linton never called any of this testimony to the attention of the Alaska courts. Linton could have easily asked the trial court (but did not) to reconsider the admission of John's statement in light of the record evidence that Linton now relies on to support his claim that the statement should not have

7

been admitted. In addition, Linton essentially ducked the issue in the Alaska Court of Appeals, asserting that it would be "difficult" to determine whether John "had reason to misrepresent Linton's involvement"; instead of focusing on the nature of his relationship with John, Linton speculated that John would have had ample reason to misrepresent if he were the one who had actually killed Elfriede, as Linton had claimed at trial. [Docket 77, Tab 35 at 29; Docket 77, Tab 37 at 5 (circumstances surrounding John's statement "do[] not establish any reliable criteria to provide a sufficient reason to believe that [John] had misrepresented [Linton's] involvement")] And Linton expressly disclaimed the ability to assess the trustworthiness of John's statement: "[I]t would be impossible to find a satisfactory basis for evaluating the truth of [John's] prior statement" because he was unavailable. [Docket 77, Tab 35 at 29; Docket 77, Tab 37 at 5]

    3.    Next Linton takes issue with the Alaska Court of Appeals's characterization of John and Pieroni as intimate and trusted companions. [Docket 123 at 39 (citing *Linton*, 880 P.2d at 125, 127-129)] Linton cites numerous testimonial references that seemingly contradict the court's characterization, asserting that John was jealous of Pieroni and Pieroni was not committed to John. [*Id.* at 39-40] But Linton's briefs in the court of appeals cited none of those references, and nothing in his briefs can be fairly read as characterizing the relationship between John and Pieroni as something other

8

than as described by the court. More importantly, in his petition for discretionary review filed in the Alaska Supreme Court, Linton implicitly concedes that John and Pieroni were "intimate and trusted companion[s]," offering that fact as "precisely the reason [John's] statement should not be admissible at all." [Docket 77, Tab 44 at 9] Linton's opposite factual assertion made in his brief should be viewed as a tacit concession that he failed to exhaust his state remedies.

    4.    Linton asserts that the Alaska Court of Appeals ignored the note John had written to Linton, which, according to Linton, was "completely inconsistent" with John's statement to Pieroni. [Docket 123 at 40] The note informed Linton that Linton's kids were with John because Elfriede "had a ride to the lower 48 and was taking off." [Docket 122, Tab 52, *quoted* Docket 123 at 41] But Linton made only passing reference to this note in the section of his court of appeals brief describing the factual and procedural background of his case. [Docket 77, Tab 35 at 5] He never relied on the note in state court to establish its purported inconsistency with John's statement to Pieroni or otherwise claimed that the note was an indication of John's untrustworthiness.

    5.    Linton asserts that John was anything but trustworthy because (1) he had lied to the Oregon parole board in support of Pieroni's parole application, (2) Pieroni's parole officer, James Northrup, testified that John was manipulative and deceptive, and (3) Pieroni described John as "something of a

'scam artist.'" [Docket 123 at 43, 50 (quoting Docket 77, Tab 21 at 956)] But as with the John's note to Linton, Linton never relied on these facts in state court as indicia of John's untrustworthiness.

6. Next Linton cites John's mental and physical health problems as evidence of his unreliability.[2] [Docket 123 at 43] But as with the other evidence Linton cites, he never directed the Alaska courts' attention to John's health issues as a basis for finding that John was untrustworthy.

7. Linton also asserts that "at least part of John's statement [to Pieroni] is certainly wrong" because "Pieroni said that John said that the murder had occurred '. . . in '81.'" [Docket 123 at 44 (quoting Docket 77, Tab 21 at 987[3])] Again, Linton never pointed out this supposed inconsistency to the Alaska courts.

8. Linton challenges the Alaska Court of Appeals's conclusion that John's statement contained "'no indication that he had attempted to minimize his own role, or shift blame.'" [Docket 123 at 50 (quoting *Linton*, 880 P.2d at 129)] Linton asserts that the purportedly best way to shift blame and minimize

---

[2] Linton asserts that "John was drunk at the time he allegedly spoke to Pieroni [about Elfriede's death]." [Docket 123 at 43 (citing Docket 77, Tab 20 at 897)] This transcript reference is to Pieroni's cross-examination, but it contains no such testimony. On the next page, however, Pieroni acknowledged only that he and had been drinking. [Docket 77, Tab 20 at 898]

[3] This quotation is actually Pieroni's reading at trial of his testimony before the grand jury. Pieroni's testimony at trial was more tentative. He

responsibility in a murder is "by saying someone else did it." [*Id.*] But again, Linton never attempted to characterize John's statement in this light in presenting his confrontation claim in state court.

9.   Finally, Linton asserts that the Alaska Court of Appeals misleadingly characterized John's statement as spontaneous "since John was speaking about events which had supposedly occurred some *seven years* earlier, *seven years* in which to decide what to say." [Docket 123 at 52] Again, Linton never pointed this out in state court.

C.   <u>By failing to fairly present to the Alaska courts the factual basis underlying his confrontation claim, Linton did not properly exhaust his state remedies</u>

Linton asserts that the Alaska Court of Appeals "apparently ignored entirely the facts calling the reliability of John Linton into serious doubt" [Docket 123 at 49]. If the court in fact did as Linton claims, he should not be surprised because if the court ignored any facts supporting his claim, it did so because he failed to call the court's attention to those facts. He had the obligation to make clear to each state court that considered his confrontation claim both the legal and factual bases for it. *See Gray*, 518 U.S. at 162 (to fulfill exhaustion requirement, habeas petitioner must refer in state court to specific federal constitutional guarantee and provide court with "statement of the facts

---

testified that he "believe[d] [John] said [Elfriede was killed] in 1981." [Docket 77,

11

that entitle petitioner to relief"); *Galvan*, 397 F.3d at 1204 (habeas petitioner must fairly present federal claim "at each level of the state court system"). A review of the state court proceedings in Linton's case demonstrates that he did not do this. And because Linton did not rely on those facts in state court, this court may not consider them. *Chacon*, 36 F.3d at 1468 (fulfillment of exhaustion requirement requires petitioner to present state courts "with all operative facts giving rise to the asserted constitutional principle"); *Hudson*, 686 F.2d at 830 (habeas court may not hear factual allegations not presented in state courts)

When Linton asserted his confrontation claim at trial, he did so in cursory and conclusory fashion and then only *after* Pieroni had testified and after the state had rested its case-in-chief. [*See* Docket 77, Tab 24 at 1280-81 (motion for mistrial)] (The respondents acknowledge that Linton objected to Pieroni's testimony, but he did so solely on basis of his pretrial objections, which were based only on hearsay, not confrontation, grounds. [Docket 77, Tab 20 at 871]) In raising his confrontation objection for the first time in his motion for mistrial, Linton made no attempt to distill for the trial court the record evidence he now claims established John's untrustworthiness. [*See* Docket 77, Tab 24 at 1280-81]

Also notable is Linton's apparent reliance on the state, not the federal, constitution when he first asserted his confrontation claim. Though he

Tab 20 at 877]

mentioned the federal constitution in passing, he claimed that the state's reliance "on the statement of a dead man" violated his confrontation right under the state constitution, which "is even more protective than" the federal. [Docket 77, Tab 24 at 1280-81] *Galvan* addressed a similar situation and concluded that when a habeas petitioner relied in state court on a state constitutional provision that is more protective than its federal sibling, there exists an unrebutted possibility that the failure to rely on the federal right was "a strategic choice," since there would be little "chance of establishing a federal constitutional violation if petitioner could not establish a state constitutional violation." *Galvan*, 397 F.3d at 1203.

Linton's attempt to raise his confrontation claim for a second time when he moved a mistrial near the end of the defense case [*See* Docket 77, Tab 27 at 1690] fared no better. He again failed to direct the state trial court's attention to any of the evidence he now claims established John's untrustworthiness.

And, as noted in part B above, Linton, in presenting his confrontation to the Alaska Court of Appeals, did not rely on any of the evidence he has now cited in this court as establishing his confrontation claim. Thus, his briefing in state court runs afoul of *Reese* and *Castillo*, which require that a habeas petitioner do the work in fairly presenting a federal claim in the state courts. *Reese*, 541 U.S. at 31 (habeas petitioner may not rely on assumption that

13

state appellate judges should comb record of earlier proceedings to discover federal nature of appellate claim). That means that to meet the exhaustion requirement, a habeas petitioner must present the federal nature of a claim, along with the factual bases of the claim, "within the four corners of his appellate briefing." *Castillo*, 399 F.3d at 1000.

In arguing the merits of his habeas claim, Linton has, with the clarity of hindsight, combed the trial court record for the facts that would purportedly have established untrustworthiness of John's out-of-court statement. But he presented none of these facts in the Alaska courts as the basis for his confrontation objection to the admission of that statement. As a result of Linton's failure to rely on this facts in state court, the Alaska courts were denied a fair and first opportunity to correct any error Linton claims those courts made, as dictated by the exhaustion doctrine.

<u>Conclusion</u>

Linton's remaining habeas claim should be dismissed for his failure to exhaust his state remedies.

DATED this 12th day of February, 2010.

        DANIEL S. SULLIVAN
        ATTORNEY GENERAL

        <u>s/ Kenneth M. Rosenstein</u>
          Assistant Attorney General
          State of Alaska, Dept. of Law
          Office of Special Prosecutions and Appeals
          310 K St., Suite 308
          Anchorage, Alaska 99501
          Telephone: (907) 269-6250
          Facsimile: (907) 269-6270
          Email: ken.rosenstein@alaska.gov
          Alaska Bar No. 7605051

**Certificate of Service**

I certify that on February 12, 2010, a copy of the foregoing Corrected Motion to Dismiss was served electronically on Averil Lerman.

        <u>s/ Kenneth M. Rosenstein</u>