Averil Lerman
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


LANCE D. LINTON, SR.,

                Petitioner,

    vs.

FRANK LUNA, et al.,

                Respondents.

Case No. 3:07-cv-0051-RRB-DMS

**PETITIONER'S REPLY BRIEF**

# TABLE OF CONTENTS

Page

I.  THE ALASKA STATE COURT DECISION REFLECTS
    AN UNREASONABLE APPLICATION OF CLEARLY-
    ESTABLISHED FEDERAL LAW. .................................... 1

    A.  The Use of John Linton's Alleged Statement Was
        Based on an Unreasonable Application of *Ohio v.
        Roberts* by the Alaska Courts. ..................................... 1

    B.  The Clearly-Established Federal Law for Purposes of
        Linton's Habeas Is *Ohio v. Roberts*.  The State's Argument
        That it Should Be Able to Require the Court to Decide
        the Case under *Crawford* Is Not Supported by the Weight
        of Authority, and Should Be Rejected............................. 5

        1.  *Lockhart v. Fretwell* is not controlling......................... 7

        2.  Other courts apply *Ohio v. Roberts* on habeas review........... 11

        3.  A number of jurisdictions still rely on *Ohio v. Roberts*
            for the purpose of evaluating the constitutionality of
            admitting non-testimonial hearsay in a criminal trial........... 13

    C.  John Linton's Alleged Statement Was Testimonial, and Was
        Made with the Expectation That the Person Hearing the
        Statement Would Go to the Authorities.  Even under *Crawford*,
        the Admission of the Alleged Statement Was Error. .................. 14

        1.  Not all private statements are non-testimonial................. 22

    D.  The State's Argument That Linton Is Barred from
        Receiving Habeas Relief Unless He Has Clearly Stated a
        Claim under *Crawford* Is in Error................................. 24

II. THE STATE COURT PROCEEDING WAS BASED ON AN
    UNREASONABLE DETERMINATION OF THE FACTS, IN
    LIGHT OF THE EVIDENCE PRESENTED............................. 27

Page

III.    LINTON HAS NOT ASSERTED A NEW CLAIM. . . . . . . . . . . . . . . . . . . . . . 30

        CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Petitioner, Lance D. Linton, Sr., by and through counsel Averil Lerman, Staff Attorney, submits the following reply brief in support of his petition for habeas corpus pursuant to 28 U.S.C. § 2254.

## I.    THE ALASKA STATE COURT DECISION REFLECTS AN UNREASONABLE APPLICATION OF CLEARLY-ESTABLISHED FEDERAL LAW

In response to Linton's arguments regarding the law to be applied, the state makes several arguments.  The state argues that, although *Ohio v. Roberts* was the clearly-established federal law at the time of Linton's trial and appeal, the Confrontation Clause question should be decided under *Crawford v. Washington* on the basis that the state can choose the law that will be applied.  [State brief, pp. 17-21].  In support of this, the state asserts that the date to be used for determining the clearly-established federal law is the 1994 date on which the Alaska Court of Appeals issued the first of two decisions on the *Linton* appeal, not the date on which the conviction was final under either state or federal law.  [State brief, p. 21.]  The state argues that *Crawford* completely overruled every aspect of *Roberts*, both as to testimonial and as to non-testimonial hearsay.  [State brief, pp. 21-28.]  The state argues that John Linton's alleged statement was non-testimonial, and therefore admission of the statement raised no Sixth Amendment issue at all.  [State brief, pp. 28-32.]  The state further argues that, if Linton's petition for habeas corpus does not assert a Confrontation Clause issue under *Crawford*, the petition cannot be considered at all.  [State brief, pp. 13-15.]  Linton's response to these arguments is set out below.

### A.    The Use of John Linton's Alleged Statement Was Based on an Unreasonable Application of *Ohio v. Roberts* by the Alaska Courts

Under the "totality of circumstances" test, the question for the Alaska court was whether there were "particularized guarantees of trustworthiness" such that "cross-examination of the declarant would be of marginal utility."  *Idaho v. Wright*, 497 U.S. 805, 823 (1990).  The reliability

and credibility of the unavailable declarant is a "circumstance surrounding the making of the [alleged] statement," and is also, of course, a circumstance to be considered in evaluating "whether the declarant is particularly worthy of belief." *See*, e.g., *Sherley v. Seabold*, 929 F.2d 272, 274-75 (6th Cir. 1991) (Elderly victim identified defendant as her attacker, but was unavailable at trial. Sixth Circuit held that admission of her statements violated Confrontation Clause where she had previously suffered from neurological symptoms before her attack, including memory loss, where she was not always coherent, and had given different accounts of the attack at various times.).

The credibility of an unavailable declarant is certainly one of the most important circumstances in determining whether the statement is so trustworthy that cross-examination of the declarant would be of marginal utility. In *Idaho v. Wright,* the Supreme Court emphasized the necessity of considering "circumstances that render the declarant particularly worthy of belief." *Id.*, 497 U.S. at 819. This command necessarily incorporates the requirement of considering circumstances that render the declarant particularly *unworthy* of belief. In applying this test, for example, courts have routinely considered whether the unavailable declarant had a motive to lie. *Lilly v. Virginia*, 527 U.S. 116, 130-39 (1999). Such a motive is not necessarily a circumstance surrounding the making of the statement, but it is clearly a circumstance relevant to whether the declarant is particularly worthy of belief.

The state talks about the "*Roberts-Wright*" standard [*see*, e.g., state brief, p. 47], but the suggestion of a unitary standard is incorrect. Each of those cases arose from distinct, and very different, factual settings. *Idaho v. Wright* involved the statements of an unavailable child who was *two years old*. 497 U.S. at 808-09. This is an important limitation on the holding of that case, because evaluation of the "totality of the circumstances" in relationship to the statement of a toddler

is not the same thing as evaluating the totality of the circumstances in relationship to the statement of an adult man.

Obviously, there is almost no way to consider a history of fraud, deceit, and mendacity when it comes to a two-year old declarant, but that is not at all the case when it comes to a grown man. The *Wright* case does not constitute an abandonment of the "totality of the circumstances test," nor of the presumption of unreliability that attaches to the statements of an accomplice which incriminate another. There is no federal case in the Ninth Circuit that refers to a "*Roberts/Wright*" standard.

Whether the unavailable declarant had a motive to fabricate is another circumstance surrounding the making of the statement, to be considered in evaluating whether there are "particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. 805, 825 110 S. Ct. 3139, 3152 (1990); *Bockting v. Bayer*, 505 F.3d 973, 979 (9th Cir. 2007).

John Linton had a motive to fabricate because he was implicated in the departure of Elfriede Linton, first through his letter describing her voluntary departure, and then by his alleged confession to assisting in the disposal of Elfriede's body after the murder. The Supreme Court has repeatedly emphasized that the statements of an accomplice are the *least likely* to be trustworthy, stating: "It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those 'hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability.'" *Lilly v. Virginia*, 527 U.S. 116, 133, 119 S. Ct. 1887, 1898 (1999) (*quoting White v. Illinois*, 502 U.S. 346, 357, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992)).

In evaluating whether or not a presumptively unreliable statement by an unavailable declarant may be introduced against a defendant, a trial court may consider collateral evidence that

indicates that the statement is unreliable. In *Webb v. Lewis*, 44 F.3d 1387 (9th Cir. 1994), the Ninth Circuit stated: "*Wright* forbids recourse to other evidence to corroborate the trustworthiness of the hearsay offered; *Wright* does not forbid recourse to other evidence that confirms the *presumptive unreliability* of the hearsay." *Id.* at 1392, *citing Idaho v. Wright*, 497 U.S. 805 (1990) (emphasis added). There, the Ninth Circuit was reviewing the accusation of a young child against the defendant for sexual abuse. In deciding that the video-taped statements of the child should have been barred by the Confrontation Clause, the court noted that the unavailable declarant had made previous inconsistent statements about what had happened, and that she was not always truthful. 44 F.3d at 1392. The court also considered the fact that the declarant had made other statements which were untruthful, on prior occasions. *Id.* at 1492-93. The court reversed the conviction on the basis of the Confrontation Clause.[1]

The state argues that evidence showing that John Linton was an untruthful person was not a circumstance that should be considered in deciding whether or not John Linton's alleged statement could be admitted without cross-examination under the Confrontation Clause. [State brief, p. 47.] John Linton's credibility, the state argues, was not a "circumstance surrounding the making of the [alleged] statement," and thus the appellate court was correct in disregarding it in addressing the Confrontation Clause claim. [State brief, pp. 47-50.] Whether "John [was] an actual liar has no place in the confrontation analysis," the state asserts. [State brief, p. 47.]

---

[1]    *See also Gaston v. Brigano*, 208 Fed. Appx. 376 (6th Cir. 2006), where the Sixth Circuit affirmed the reversal of a conviction based on an accusation by an unavailable declarant who had made "unmistakably inconsistent statements" about the alleged crime. 208 Fed. Appx. at 388. Those statements were not made at the same time as the recorded statements introduced at trial. *Id.* On this basis, the appeals court concluded the recorded statements should not have been introduced because they were "untrustworthy." *Id.*

Accordingly, the state argues, the Alaska court was correct in ignoring the fact that John Linton had written out another statement that was completely inconsistent with the statement alleged by Pieroni, and was correct in ignoring the testimony of two law enforcement officers who stated that John Linton had lied to them in connection with Pieroni. These things, the state says, go to "John's actual credibility," but that is a matter not to be considered in the Confrontation Clause analysis.

In supporting this argument, the state relies on examples using exceptions to the hearsay rule that are defined as "firmly-rooted," including excited utterances, dying declarations, and statements relating to medical treatment. [State brief, p. 48.] These exceptions, the state (correctly) argues, have "circumstantial trustworthiness," and so the credibility of the declarant is not in issue.

The state court, however, admitted John Linton's alleged statement under a hearsay exception which is *not* "firmly-rooted," the exception for statements against penal interest. Because the hearsay exception is not firmly-rooted, the statement is *presumed* to be *unreliable*, as a matter of law. Under these circumstances, there is no circumstantial trustworthiness. The credibility of the declarant is one of the most critical circumstances to be considered, then, in determining whether there are "particularized guarantees of trustworthiness."

**B.    The Clearly-Established Federal Law for Purposes of Linton's Habeas Is *Ohio v. Roberts*. The State's Argument That it Should Be Able to Require the Court to Decide the Case under *Crawford* Is Not Supported by the Weight of Authority, and Should Be Rejected**

The state concedes that the clearly-established federal law at the time of Lance Linton's state case was defined by *Ohio v. Roberts*. [State brief, p. 11.] The state argues that the habeas court should base its decision on clearly-established federal law as of a date 12 years before Linton's state litigation was complete. [State brief, p. 21.] The state submits that the applicable date

is the date that the Alaska Court of Appeals issued its first (of two) decisions in the *Linton* appeal,[2] in complete disregard of the subsequent petitions to the Alaska Supreme Court (denied over the dissent of Justice Rabinowitz) and the United States Supreme Court, and in disregard of the post-conviction litigation which was only completed on December 7, 2006.[3]  The date proposed by the state is not the date on which Linton's conviction was final, and its proposal is not supported by any authority.

The state argues that this court should apply *Crawford v. Washington*, and not *Ohio v. Roberts*, in deciding whether or not Lance Linton's conviction violated the Confrontation Clause, notwithstanding the fact that the state trial and appellate courts expressly relied on *Ohio v. Roberts* in deciding the *Linton* case, and that the *Crawford* decision was issued years later.  [State brief, pp. 17-21.]

In making this argument, the state relies on two Sixth Circuit decisions, *Desai v. Booker,* 538 F.3d 424, 428 (6th Cir. 2008), and *Jackson v. McKee*, 525 F.3d 430, 437-38 (6th Cir. 2008).  [State brief, p. 17.]  Essentially, the state argues that it can choose to have the court apply *Crawford* as the "clearly-established federal law" that governs habeas review.  It asserts that *Crawford* overruled *Roberts*, and that, although Linton himself is limited to requesting review under *Roberts*, the state may choose to have the court apply *Crawford* instead. [State brief, pp. 18-21.] The state then asserts that, because Linton has no chance of success under *Crawford*, it is immaterial if the state court unreasonably applied *Ohio v. Roberts* in his case.  [State brief, pp. 20-21.]

---

[2]  The first decision was *Linton v. State*, 880 P.2d 123, issued on August 26, 1994. [SR Tab 38.]  The second decision was *Linton v. State*, 901 P.2d 439, issued on August 11, 1995.  [SR Tab 43.]

[3]  The complete history of the state court litigation is set out in Linton's Amended Petition for Writ of Habeas Corpus, Docket 25, pp. 8-12.

Citing *Teague v. Lane*, 489 U.S. 288 (1989), the state argues that, because a habeas petitioner has no interest in the finality of the state court's judgment of conviction, and has "no claim of reliance on past precedent," the state should be able to waive the non-retroactivity rule, and request that the habeas court apply the new law.  [State brief, p. 18.]

### 1.    *Lockhart v. Fretwell* **is not controlling**

In making this argument, the state relies on *Lockhart v. Fretwell*, 506 U.S. 364 (1993). An analysis of the factual and legal history of that case shows it to be highly distinguishable.

Fretwell was convicted in Arkansas state court of capital felony murder.  Using a fact which was also identified as an element of the crime (that the crime had occurred for pecuniary gain), the Arkansas jury found an aggravating factor, and sentenced to Fretwell to death based on that factor. *Id.* at 366.  At the time of Fretwell's trial, Fretwell's attorney did not object, even though, under the prevailing law at the time, the finding of the aggravating factor was prohibited under Eighth Circuit precedent.

On direct appeal, Fretwell's claim was rejected because his attorney made no objection during sentencing.  Fretwell filed a state and then a federal habeas, asserting that he had been deprived of effective assistance of counsel because his attorney had failed to raise the objection.  Subsequently, federal law at both the circuit level and the Supreme Court level changed:  the prohibition against "double counting" specific conduct as both an element of the crime and as an aggravating factor was discontinued.  Under the new law, the attorney's failure to make an objection no longer constituted an error.

Fretwell's habeas claim as to his sentence was granted at the district court level, because, had his attorney acted appropriately under the law in effect at the time, Fretwell could not have been sentenced to death.  506 U.S. at 367.  The Eighth Circuit Court of Appeals affirmed the

grant of habeas on the basis that it was unfair to sentence him under current law, when, if he had been correctly sentenced at the time of trial, he would not have faced a sentence of death. 506 U.S. at 368.

The Supreme Court reversed, over the dissent of two justices. Repeatedly, the court emphasized that, because the outcome was neither fundamentally unfair nor unreliable, the mere fact that it would have been different had counsel objected did not constitute prejudice under the *Strickland* test for ineffectiveness. 506 U.S. at 371-72. The court emphasized that "the result of the sentencing proceeding in the present case was neither unfair nor unreliable." 506 U.S. at 371. The Court continued, "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U.S. at 372.

Lockhart had no argument that his attorney had relied on the existing law at the time of the sentencing because his attorney had actually just ignored the law. *Lockhart*, 506 U.S. at 373. Stated another way, because Lockhart had not relied on the constitutional standards that prevailed at the time of trial, he could not complain that he was being penalized by the court's reliance on subsequent federal authority. *Lockhart*, 506 U.S. at 372-73, *citing Butler v. McKellar*, 494 U.S. 407, 414, 110 S. Ct. 1212, 1217, 108 L. Ed. 2d 347 (1990). Nor did Lockhart have an argument that, at the time of his trial, he had articulated his claim under the predominantly-used constitutional framework for such an argument, but that he could also have articulated his claim of fundamental unfairness under another constitutional rubric had he had any reason to believe that such an alternative claim might be necessary or appropriate.

The *Lockhart* decision rested heavily on the Supreme Court's 1986 decision in *Nix v. Whiteside,* 475 U.S. 157, 106 S. Ct. 988, 89 L. Ed. 2d 123. *Lockhart*, 506 U.S. at 370. In that case, a prisoner argued that he received ineffective assistance of counsel because his trial attorney had

refused to cooperate in presenting perjured testimony which would have avoided the conviction.  In its decision in *Nix*, the Supreme Court emphasized that Whiteside's complaint was ill-founded because he had not been "deprived of [either] a fair trial [or] any of the specific constitutional rights designed to guarantee a fair trial," and thus had suffered no prejudice.  *Nix v. Whiteside*, 475 U.S. at 186-87, *quoted in Lockhart* at 506 U.S. at 370.  Whiteside had no right to put forward perjured testimony, and could not complain that his trial had been rendered unreliable or unfair by his counsel's unwillingness to assist him.  Thus, both *Lockhart* and *Nix* centered on the idea that there is no constitutional deprivation in an ineffective claim unless the trial court result would have been different, and unless the error could be said to have deprived the defendant of a fair and reliable trial.

In both *Lockhart* and *Nix,* the Court expressed concern that a habeas preceding should not result in the provision of "a windfall" to a defendant.  *Lockhart*, 506 U.S. at 366, 370, and 373.  Whiteside had no right to put forward perjured testimony, and thus his trial was not rendered unfair because of his attorney's refusal to help him.  Fretwell's sentence was not unfair because the aggravating factor that was found by the jury was valid under Supreme Court law and could not have been avoided even if that law had been anticipated.[4]

It is relevant that *Lockhart* and *Nix* were both ineffective assistance of counsel cases, decided under the Sixth Amendment.  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart*, 506 U.S. at 372.  The word "windfall" is found three times

---

[4]  The Supreme Court declined to entertain the state's argument, that Fretwell could not claim to be in custody in violation of the Constitution or laws or treaties of the United States by the imposition of subsequently-decided the United States Supreme Court decisions, since those decisions did define the law under which this custody continued.  *Lockhart*, 506 U.S. at 371 n.5.

in the court's opinion, and four times in the dissent. *Lockhart*, 506 U.S. at 366-, 360, 373, 376, 377, 389.

In this case, Lance Linton does not stand to gain any sort of windfall should the court apply *Ohio v. Roberts* in his habeas. First of all, in Mr. Linton's case, the issue before the court has a very direct bearing on whether or not Linton's trial was unfair and unreliable. Linton's conviction rested heavily on a presumptively unreliable hearsay statement – the statement of an accomplice that incriminates another. To the extent that the admission of John Linton's alleged statement rendered the trial unfair and unreliable, under any clause of the United States Constitution, correction of that error does not constitute a windfall for Mr. Linton.

Furthermore, unlike the petitioner in *Lockhart*, Linton relied on clearly-established federal law at the time of the trial in raising a Confrontation Clause objection to the admission of John Linton's alleged statement. At the time of the trial, there was no Supreme Court distinction between testimonial and non-testimonial hearsay, and there was no doubt that a criminal defendant in Mr. Linton's place should raise his objection to the use of the statement under the rubric of the Confrontation Clause and under *Ohio v. Roberts*. It is important to recognize, however, that there are other constitutional provisions which protect the rights of a criminal defendant to a fair trial, notably the Due Process Clauses of the Fifth, Sixth, and Fourteenth amendments to the United States Constitution.

Unlike Fretwell, Lance Linton has a "claim of reliance on past precedent," such that it would be unfair to now apply *Crawford v. Washington*. Lance Linton relied completely on the clearly-established federal law in effect at the time of his trial and appeal. He chose to raise his claim regarding John Linton's alleged statement under the Confrontation Clause, a decision that was completely reliant on *Ohio v. Roberts*. Although he made some mention of fundamental fairness and

of the Due Process Clause, he did not develop that discussion extensively, nor focus on exhausting those claims as thoroughly as he did the Confrontation Clause claim.

Second, the remedy for Mr. Linton should habeas be granted is retrial, not unconditional release. Linton submits that the "clearly-established federal law" for purposes of this habeas case constitutes *Ohio v. Roberts,* but that is not the law that would govern his retrial. Thus, Mr. Linton's new trial would be decided under currently-existing constitutional law, both the Due Process and Confrontation Clauses. Should the evidence in question be admissible under the United States Constitution as presently interpreted, the evidence will be again admitted. On the other hand, should Mr. Linton successfully challenge the admission of that evidence under the right to a fair trial and the right to due process of law, the evidence will not be admitted. Either way, Mr. Linton's retrial guarantees the state an opportunity to apply current law, and guarantees Linton an opportunity to present a case under that law.

### 2.    Other courts apply *Ohio v. Roberts* on habeas review

Numerous federal courts have faced cases like this one, cases which were litigated at the state level under *Ohio v. Roberts*, and then litigated at the habeas level after the 2004 issuance of *Crawford v. Washington*. Federal courts have applied *Ohio v. Roberts* in deciding the habeas claims. *See*, e.g., *Bockting v. Bayer*, 505 F.3d 973, 978 (9th Cir. 2007) (*Ohio v. Roberts* applied to habeas based on pre-*Crawford* conviction); *Winzer v. Hall*, 494 F.3d 1192, 1194 (9th Cir. 2007) (*Crawford* does not apply to habeas review of pre-*Crawford* Confrontation Clause claim on habeas review); *Fratta v. Quarterman*, 536 F.3d 485, 490, 499 n.10 (5th Cir. 2008) (same); *Fulcher v. Motley*, 444 F.3d 791 (6th Cir. 2006); *Kennedy v. Knowles*, 558 F. Supp. 2d 960, 967 (N.D. Cal. 2008); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 827 (E.D. Mich. 2009) (admissibility of non-testimonial hearsay is evaluated under *Roberts* in the Sixth Circuit, after the decision in *Crawford*, *citing United States v.*

*Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007)); *Campbell v. McDaniel*, 2009 WL 2898826, *5 (D.

Nev. 2009) (*Crawford* does not apply to habeas review of pre-*Crawford* Confrontation Clause claim);

*Thompson v. Del Papa*, 2008 WL 4167078 n.3 (D. Nev. 2008) (same); *Rivas v. Ryan*, 2007 WL

1972212, *8 (S.D. Cal. 2007) (same); *Miller v. Fleming*, 291 Fed. Appx. 72, 73 (9th Cir. 2008)

(unpublished).

In a number of instances, the federal habeas courts have applied *Crawford* to the

habeas case, but only after the state court had also chosen to apply *Crawford* at the state level. In

*Delgadillo v. Woodford*, 527 F.3d 919, 924-26 (9th Cir. 2008), the California state court applied

*Crawford* to the petitioner's Confrontation Clause claims, at the state post-conviction level. At the

habeas level, the federal court held that this choice of law by the state court was not unreasonable,

and that it was within the state court's authority to decide to retroactively apply *Crawford* on

collateral review, and that the federal court would defer to the decision made by the state court. *See*

*also Garnett v. Morgan*, 330 Fed. Appx. 671 (9th Cir. 2009) (an unpublished decision cited under 9th

Cir. Rule 36-3) (State court chose *Crawford* as law applying to post-conviction case. Federal court

refused to disturb that finding because state courts are not governed by the retroactivity rule of

*Teague*, and federal court will defer to the state court's determination of the clearly-established

federal law.).

Linton's trial strategy would have been very significantly different had he known

*Crawford* would be the governing case. First, he would have developed and enhanced the evidence

establishing that, at the time that John Linton allegedly spoke to Stephen Pieroni, John Linton did so

with the expectation that Pieroni would take the matter to the authorities. Pieroni testified that John

Linton had known that Pieroni would "do something" [Tr. 879]. Because *Ohio v. Roberts* was the

governing law, Linton's attorney objected to further testimony about what John Linton had expected, presumably because that was irrelevant to the Confrontation Clause issues. Obviously, under *Crawford*, John Linton's expectation was hugely important, and the matter would have been developed during the investigation before trial, and in courtroom testimony.

Second, Linton would have expanded his claim under the Due Process Clauses of the Fifth, Sixth, and Fourteenth Amendments, in addition to raising a claim under the Confrontation Clause. Such an approach has been the subject of significant recent commentary in connection to fundamental fairness and the denial of the right to cross-examine out-of-court declarants whose testimony is described as non-testimonial.[5]

> **3.    A number of jurisdictions still rely on *Ohio v. Roberts* for the purpose of evaluating the constitutionality of admitting non-testimonial hearsay in a criminal trial**

The state's assertion that *Ohio v. Roberts* is a dead letter for all purposes is not correct. As is argued above/below, the *Roberts* test is routinely used in habeas cases where *Ohio v. Roberts* was the clearly-established federal law at the time the petitioner's state conviction became final. *See* p. 11, above. Further, the *Roberts* reliability test is still used in some federal courts, in evaluating the admissibility of non-testimonial hearsay under the Confrontation Clause. *See*, e.g., *Whittaker v. Lafler,* 639 F. Supp. 2d 818, 827 (E.D. Mich.. 2009); *United States v. Mooneyham*, 473 F.3d 280, 286 (6th Cir. 2007).

---

[5]    *See*, e.g., Jules Epstein, AVOIDING TRIAL BY RUMOR: IDENTIFYING THE DUE PROCESS THRESHOLD FOR HEARSAY EVIDENCE AFTER THE DEMISE OF THE *OHIO V. ROBERTS* 'RELIABILITY' STANDARD, 77 UMKC L. Rev. 119 (Fall 2008); Jules Epstein, CROSS-EXAMINATION: SEEMINGLY UBIQUITOUS, PURPORTEDLY OMNIPOTENT, AND 'AT RISK', 14 Widener L. Rev. 427 (2009). *See also Dutton v. Evans*, 91 S. Ct. 210, 222-25 (1970) (concurring decision of J. Harlan).

Admission of non-testimonial hearsay statements of an accomplice which incriminate the defendant still offend the Confrontation Clause.  *See* SIXTH AMENDMENT AT TRIAL, 38 Geo. L.J. Ann. Rev. Crim. P. 635, 665 (2009) (most statements in furtherance of a conspiracy may be barred by the Confrontation Clause even though they are non-testimonial, where a coconspirator's statement is used against a non-testifying accomplice and shifts blame to the defendant, *citing Lilly v. Virginia,* 527 U.S. 116, 134 (1999)).

**C.**  **John Linton's Alleged Statement Was Testimonial, and Was Made with the Expectation That the Person Hearing the Statement Would Go to the Authorities.  Even under *Crawford*, the Admission of the Alleged Statement Was Error**

The state asserts that, under *Crawford*, Linton's constitutional claim would be denied. The state argues that Linton has suffered no constitutional injury because the admission of John's alleged statement into evidence at his trial did not violate the Confrontation Clause, as the clause was interpreted in *Crawford v. Washington* and *Davis*.  [State brief, pp. 28-32.]  The state asserts that John's alleged statement was nothing more than "a casual remark to an acquaintance," that it was informal, that it was spontaneous, and that it was made under circumstances in which there is no likelihood that John could have believed the alleged statement would be available for use at a later trial.  [State brief, pp. 29-32.]  Accordingly, the state argues, Linton is not entitled to habeas relief, because there has been no constitutional violation.

In support of its argument that John's alleged statement was non-testimonial, the state cites two cases:  *Dutton v. Evans*, 400 U.S. 74 (1970), and *Jensen v. Pliler*, 439 F.3d 1086 (9th Cir. 2006).  [State brief, pp. 30-31.]  Both of these cases are so factually distinguishable that the state's reliance is misplaced.

In *Dutton v. Evans*, 400 U.S. 74 (1970), Alex Evans asserted that he had been deprived of the right to confront a witness at trial, and that his conviction should be reversed.  The case was decided by the Supreme Court ten years before its decision in *Ohio v. Roberts*, 448 U.S. 56 (1980).  During Evans's trial, a mountain of evidence was put forward showing that he had participated in the murder of three police officers in Georgia.  The evidence against him included a detailed testimony by one of his accomplices, Wade Truett, regarding everything that happened, as well as testimony from 20 other witnesses regarding the slaying.

One of the state's minor witnesses was a jailhouse snitch named Shaw, who claimed to have been in prison with Evans's other accomplice, a man named Williams, and claimed to have heard Williams make a single ambiguous statement, that, if it had not been for Evans, "we wouldn't be in this now."  Williams did not testify at the trial.  Evans's Confrontation Clause claim relied *entirely* on the admission of the ambiguous statement made by Williams.

*Dutton v. Evans* is completely distinguishable, and bears almost no factual similarity to Linton's case.  The decision in the case did not turn upon the fact that Williams's statement was spontaneous, or against his penal interests, nor were those factors central to the court's decision.  The heart of the case was that, even if there had been a Confrontation Clause error, such an error would have been harmless beyond a reasonable doubt.  *See Dutton*, 400 U.S. at 87 ("[t]his case does not involve evidence in any sense 'crucial' or 'devastating'"), and 400 U.S. at 87-90.  *See also* Blackmun's concurring opinion, expressly discussing harmless error.  400 U.S. at 90-93.

The evidence of petitioner Evans's guilt was overwhelming.  400 U.S. at 77-78, 87.  The snitch whose testimony had been challenged, Mr. Shaw, was almost impossible to believe, and appeared to be lying.  *Id*. at 88, 89, 90-92  The statement that Shaw attributed to Williams was

ambiguous, and was not clearly incriminating, and was "of peripheral significance at most," *id.* at 87, and "contained no express assertion about past fact."  *Id.* at 89.  The fact that another of Evans's accomplices, Mr. Truett, testified at length and in great detail about exactly what had happened rendered any error in the admission of Shaw's ambiguous testimony harmless, *id.* at 76-77, where many other witnesses corroborated Truett's account.  *Id.* at 92-93.  The court mentioned spontaneity and penal interest, *id.* at 89, but only at the end a list of other reasons justifying its decision, the first two of which had to do with harmlessness.  400 U.S. at 88-89.

The alleged exchange between the snitch witness, Shaw, and the non-testifying accomplice was completely dissimilar from the alleged exchange between Stephen Pieroni and John Linton.  According to informant Shaw, Williams was lying in a prison hospital room, on a bed, with his back to the door, shortly after his arraignment.  Shaw claimed to have addressed Williams from the hallway outside, speaking through a window covered by steel-mesh and glass, with a vague statement about how court went that day.  Shaw claimed that he heard Williams say, in response, that, if not for Evans, "we wouldn't be in this now."  Justice Blackmun's concurring opinion emphasized the extent to which Williams's testimony was not believable, and that no reasonable jury could have given it weight.  *Id.* at 90-91.

The state's reliance on *Jensen v. Pliler*, 439 F.3d 1086 (9th Cir. 2006), for the purpose of arguing that John Linton's statement was non-testimonial hearsay is also misplaced.  The facts of the *Jensen* case are distinguishable in a number of critically important ways.

In 1998, Kevin James was murdered.  439 F.3d at 1087.  George Taylor was charged.  Taylor spoke to an attorney, Todd Rash, regarding the charges.  Rash told Taylor that everything Taylor told him would remain secret under the attorney-client privilege, and expressly "promised that

he would never, ever, tell anyone" what Taylor told him.  439 F.3d at 1088.  Taylor then told Rash

that four other people had been involved in the killing, one of whom was Jensen.  Taylor said he

would go to jail before he would ever testify against any of the others.  *Id.*

   Taylor was released from jail (presumably on bail).  He was subsequently murdered

by two of the men whom he had identified to Rash as accomplices to the first murder – Josef Jensen

and Terence Blesdoe, because they believed he had talked to the police and to the attorney.  Id.  At

Jensen's trial, the state called attorney Rash, who testified about what he had been told by the

now-murdered George Taylor.  Jensen objected on the basis that he could not confront Taylor.

During the course of his post-conviction litigation, the Supreme Court decided *Crawford v.*

*Washington*, 541 U.S. 36 (2004).

   The Ninth Circuit affirmed Jensen's conviction.  It held that the California state courts

had not acted in a manner that was contrary to or involved an unreasonable application of *Ohio v.*

*Roberts*.  439 F.2d at 1090.  Thus, under the review required by 28 U.S.C. § 2254(d), the habeas claim

was denied.  The court also concluded that the statements were non-testimonial hearsay, and thus,

under *Crawford v. Washington*, admission did not violate the Confrontation Clause.

   In support of the conclusion that Taylor's statements had been non-testimonial, the

Ninth Circuit emphasized that Taylor had made them only after being *repeatedly* assured by Rash that

nothing he said would ever be repeated to anyone.  Taylor said he would rather go to jail than to

testify against the others, and thus spoke on the condition of non-disclosure.  439 F.3d at 1090.  He

knew his statements were protected by the attorney-client privilege, and had been specifically told that

they would remain secret.  *Id.*  Accordingly, the court concluded, Taylor could not have "reasonably

expect[ed] [his statements to his attorney Rash] to be used prosecutorially or reasonably . . .

believe[d] that the statement[s] would be available for use at a later trial." 439 F.3d at 1090, *quoting*

*Crawford*, 541 U.S. at 51-52 (internal quotation marks deleted).[6]

This is very different from the circumstances surrounding the alleged statement of John Linton. In that situation, there was no assurance at all that what John said would be kept secret by Stephan Pieroni. There was no request for secrecy, and no promise of secrecy. In fact, according to Pieroni, John Linton spoke with the expectation that Pieroni would "do something" about what was said. [Tr. 879.] The most likely response that John expected was that Pieroni would tell the authorities, which is exactly what Pieroni did. Taylor spoke on the express condition of secrecy. John Linton did no such thing.

The state argues that John Linton's alleged statement would certainly be found to be non-testimonial if the matter were tested. [State brief, pp. 31-32.] The state asserts that John's statement was not adequately formal, because he spoke to Pieroni in his own home. [State brief, p. 31.] It asserts that a statement to a "trusted companion" means that it could not be testimonial. *Id.* It argues that the statement was spontaneous, and was "little more than a casual remark to an acquaintance." *Id.* Finally, the state asserts that "nothing in the record suggests an objective person in John's shoes would believe that what he said to Pieroni might be reported to the authorities." [State brief, p. 32.]

---

[6] Because Jensen killed Taylor for the purpose of silencing Taylor, Jensen would also have been precluded from relying on the Confrontation Clause under the forfeiture-by-misconduct exception to the protection of the clause. *See Crawford*, 541 U.S. 36, 61. Although this theory was not directly addressed in the case, the equitable doctrine is unavoidably present in the facts of the case.

Lance Linton has never had a chance to litigate the facts regarding whether or not John's alleged statement was testimonial or not, because, throughout his trial, that governing Confrontation Clause law focused on whether John's statement was reliable, under *Roberts*, and not on whether it was testimonial. Nonetheless, even on the basis of the record that Linton made during his 1992 trial, it is clear that there is a real likelihood that John Linton's statement was in the nature of testimony.

According to the ENCARTA WORLD ENGLISH DICTIONARY (North American ed.),[7] the word "casual" has a number of meanings. These include "superficial:  not involving emotional commitment or loyalty or lacking thoroughness or seriousness," "nonchalant:  cool, calm, or nonchalant in manner," "not formal:  informal and relaxed," as in "a casual dinner," "chance or unpremeditated: happening or done by chance without prior thought or planning," and "indifferent: showing little interest or enthusiasm."

John Linton's alleged statement was not "casual" under any of these definitions. It was not an off-the-cuff comment, or a small aside, or some other verbal response which was not the product of careful thought and decisional process. The statement was not nonchalant, or relaxed, or done without serious intent. It involved a matter of the greatest seriousness – a disclosure of the alleged confession of John's own son to the murder of another, and the alleged confession of John himself to having participated in the cover-up of that murder. The communication made by John to Pieroni was solemn – according to Pieroni, John was in tears, overcome by the seriousness of what he was saying.

---

[7]    This    resource    is    online    at http://encarta.msn.com/encnet/features/dictionary/Dictionary Results.aspx?refid=1861670213.

Pieroni himself stated that John expected that action would result from his communication. He said, "John knew that I was going to do something." [Tr. 879.] According to Pieroni, John expected that Pieroni would right the wrong – would take positive action. This expectation, in combination with the seriousness of John's subject, identifies the communication as "testimonial."

The state argues that this last statement of Pieroni should be ignored, citing the fact that there was an objection after Pieroni made his statement that "John knew I was going to do something," and the objection was sustained. The suggestion is made that the objection was made and sustained because the statement was "speculative." These positions are not supported by review of the trial transcript.

This is the trial exchange that took place:

The prosecutor was conducting his direct examination of the state's main witness, Stephan Pieroni. He was asking Pieroni about how Pieroni decided to tell the police about what John Linton allegedly said to him, beginning with the question, "What were the circumstances which led to you telling the police about this conversation that you had with John Linton?" [Tr. 878.] Pieroni described how he had been caught by the police in the fraudulent pull-tab scheme, and how he then decided to talk to the police about John Linton. [Tr. 878-79.] The following exchange then occurred:

DA: And that's when you told both of them about the conversation that John Linton had with you?

Pieroni: Correct.

DA: Now, why did you tell them?

Pieroni: I'd been dealing with that for -- since June. John knew that I was going to do something.

[Tr. 879.]

At this point, Linton's defense attorney objected, without stating a basis, saying only "Objection, Your Honor." [*Id.*] The court responded without explanation of any sort, stating only, "Sustained. Question, Mr. Wood [the DA]." [*Id.*]

It is important that the basis for the objection was not stated. Although the state theorizes that the objection was made on the basis of speculation [state brief, p. 32], the more probable basis for the objection was relevance. In 1992, when *Ohio v. Roberts* governed the Confrontation Clause analysis, John Linton's expectations about what Pieroni would do were not critical to the Constitutional analysis. Of course, with the the 2004 publication of *Crawford v. Washington*, John Linton's expectation that Pieroni would "do something," like go to the authorities, is the *central* question in the constitutional analysis, because it clearly marks his statement as testimonial in nature. *See Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S. Ct. 2527, 2531-32 (2009) (expectation of declarant is central to evaluating whether statement is testimonial). After 2004, Linton's attorney would have developed this line of inquiry, asking questions like, "What did John say that told you he knew you were going to 'do something,'", and establishing that John's intent had been to incite Pieroni to take appropriate action. That development did not occur in 1992, because the governing law was completely different.

For this reason, it would be premature and unwarranted to conclude that John Linton's alleged statement was non-testimonial, when Lance Linton had no reason to know, at the time of this trial, that the answer to that question might subsequently govern his Confrontation Clause claim, and his conviction for murder. There is no better illustration of that than the trial transcript discussion above, which indicates that there was a significant basis for believing that John's statement was

testimonial in nature, but that basis was not developed because, at the time of trial, that matter was not relevant.

Notwithstanding the state's suggestion, however, Pieroni's answer regarding John's expectation is validly in the trial record, and can be considered as part of the state court record.  The defense made no motion to strike, and there was no such order.  Without such a motion, the testimony stands.  The state cites no authority to the contrary.  [State brief, p. 32.]  The trial record indicates that the purpose of the objection was to terminate further questioning along this line, not to strike the answer that had already been given.

### 1.     Not all private statements are non-testimonial

The exact contours of what statements are "testimonial" and what statements are not have yet to be drawn.  It is incorrect, however, to state that all communication between one private person to another is, by definition, non-testimonial.  *See*, e.g., *Fratta v. Quarterman,* 536 F.3d 485 (5th Cir. 2008).  In *Crawford*, the court declined to specifically define "testimonial," but it offered one formulation for testimonial hearsay which might apply to private conversations – any statement that would "lead an objective witness reasonably to believe" that the statement "would be available for use at a later trial."  *See Crawford*, 541 U.S. at 51.  This formulation "could reach statements made in purely private settings."  Christopher Mueller and Laird Kirkpatrick, 4 FEDERAL EVIDENCE § 8:27 (updated 2009).  *See also* Wright and Graham, 30A FEDERAL PRACTICE AND PROCEDURE § 6371.3 (1st ed.), updated 2010, text and authorities cited between n.295 and n. 296.  Crawford focuses on the

speaker's "expectations," a reasonable awareness that the statement might be used in investigating or prosecuting a crime. *Id.*, text and authorities set out near n.8.[8]

Where the statement relates to a serious crime, and where the speaker was personally involved in the events relating to the crime, it is more likely that a reasonable person would expect that his statement would lead to investigation or prosecution of the crime. *Id.*, text between n.7 and n.11, and n.17 and n.22. A statement that accuses another person of a serious crime is more likely to be testimonial. *Id.*, between n.17 and n.18. Where a speaker anticipates or even hopes that a private person to whom she speaks "will call the matter to the attention of authorities," that would weigh in favor of identifying the statement as testimonial. *Id.*, text adjoining n.17 to n.21.

The state relies on *Padilla v. Terhune*, 309 F.3d 614 (9th Cir. 2002), and *United States v. Boone*, 229 F.3d 1231 (9th Cir. 2000), for the proposition that, under *Ohio v. Roberts*, there was no Confrontation Clause protection for statements made by an accomplice to a friend in a private setting. [State brief, pp. 36-37.] Those cases are distinguishable because the reliability findings in each of those cases squarely centered on the fact that, in the statements at issue, the declarant directly incriminated himself as much as he incriminated another. *Padilla*, 309 F.3d at 618-19. One accomplice was admitting his full and equal guilt in speaking to a third party about events which also involved other accomplices, "unabashedly inculpating himself while making no effort to mitigate his own conduct or shift blame." *Id*. at 619. That certainly was not the case here.

---

[8] Because the Westlaw database does not indicate page numbers in this treatise, citations will include an indication of the adjacent footnotes for navigational purposes, to permit easier review of the authority.

Professor Richard Friedman, upon whose work the Supreme Court expressly relied in the *Crawford* decision, argues that statements made by one private person to another are testimonial to the extent that the declarant expects that the statement may my be presented to the authorities. Richard Friedman CONFRONTATION: THE SEARCH FOR BASIC PRINCIPLES, 86 Geo. L.J. 1011, 1039-43 (Feb. 1998), *cited in Crawford v .Washington,* 541 U.S. 36, 61 (2004).[9]

### D.    The State's Argument That Linton Is Barred from Receiving Habeas Relief Unless He Has Clearly Stated a Claim under *Crawford* Is in Error

The state argues that 28 U.S.C. § 2254(a) states that federal habeas relief is available only to state prisoners who, at the time their petitions are filed, are being held in violation of an existing constitutional right. [State brief, pp. 13-15, *citing Desai v. Booker*, 538 F.3d 424, 428 (6th Cir. 2008).] The argument is that, if the habeas petition alleges conduct that was in violation of the Constitution at the time of the trial, but that is no longer in violation of the Constitution, federal habeas relief is not available under § 2254(a). [State brief, pp. 13-14.]

Title 28, United States Code, section 2254(a), states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall *entertain* an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States.

---

[9] *See also* Friedman, GRAPPLING WITH THE MEANING OF 'TESTIMONIAL,' 71 Brooklyn L. Rev. 241, 248-51 (2005) (arguing in favor of an approach that the anticipation of the speaker is what should be determinative). *See also* Jules Epstein, AVOIDING TRIAL BY RUMOR: IDENTIFYING THE DUE PROCESS THRESHOLD FOR HEARSAY EVIDENCE AFTER THE DEMISE OF THE *OHIO V. ROBERTS* 'RELIABILITY' STANDARD, 71 UMKC L. Rev. 119 (Fall 2008).

(Emphasis added.) The literal language of this provision has to do with "entertaining" an application for a writ of habeas corpus. "To entertain" is defined as "give attention or consideration to," or "give attention or consideration to,"[10] "to consider, contemplate," or "to hold in mind;"[11] or "to receive and take into consideration;"[12] "to allow oneself to think about; have in mind; consider."[13] This section does not provide that a writ may only be issued if the action complained of is presently in violation of the Constitution, but rather limits the grounds which must be asserted in order to even be eligible for review. The section does not prescribe a limitation on issuing a writ, but only on considering a petition.

     The purpose of § 2254(a), then, is to identify the kind of claims that must be *pleaded* in order to file a petition for habeas corpus: the petitioner must claim that he is in custody in violation of the Constitution or laws or treaties of the United States in order to have his petition considered by a federal court, not to require that the claim be successful before it is even reviewed. The interpretation placed on the section by the state is inconsistent with the clear command of the provision, which restricts the court to considering habeas corpus as a remedy only where one of the named violations has been alleged by the petitioner. Section 2254(a) sets out the basic limits of the

---

[10] COMPACT OXFORD ENGLISH DICTIONARY, accessed at http://www.askoxford.com/ concise_oed/ entertain?view=uk.

[11] AMERICAN HERITAGE DICTIONARY, accessed at http://education.yahoo.com/reference/ dictionary/entry/entertain.

[12] MERRIAM-WEBSTER DICTIONARY (11th ed.), accessed at http://www.merriam-webster .com/dictionary/entertain.

[13] WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 4th ed., accessed at http://www.your dictionary.com/entertain.

kinds of claims that may be made in an petition.  Section 2254(b) sets out the preliminary procedural

prerequisites for a state prisoner to seek federal habeas relief, such as exhaustion of state remedies.

The Sixth Circuit's decision in *Desai v. Booker*, 538 F.3d 424 (2008), cited by the state

at p. 13 of its brief, fails to consider the use of the word "entertain" in § 2254(a), and reaches a

conclusion regarding the meaning of the provision which is not supported by a careful reading, nor

by other case law.

The state's argument is also inconsistent with *Lockyer v. Andrade*, 538 U.S. 63, 71-72

(2003).  The language of 28 U.S.C. § 2254(d) is a compelling indicator that, for habeas purposes, the

court is to review the constitutionality of the conviction under the clearly-established federal law

applicable *at the time the conviction became final*.  That provision states:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that ***was*** contrary to, or involved an
> unreasonable application of, clearly-established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted
> in a decision that ***was*** based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

(Emphasis added.)

The language of the clause clearly indicates that the granting of a habeas petition may

be made if, *at the time the conviction became final*, the decision *was* contrary to, or involved an

unreasonable application of law, or an unreasonable determination of facts.  The clause uses the past

tense in both subparts (l) and (2), not the present tense.  The language of the clause indicates that the

intention of Congress was to focus on the clearly-established federal law *at the time of state court*

*action,* not at the time of the subsequent habeas case.

This approach makes sense because, to the extent that the law is changed during the course of the post-conviction and habeas review, the new law will be fairly applied to the defendant at the time of retrial, when the defendant has the opportunity to present evidence pertinent to the newly-controlling law at trial, and to take into account the new law in developing a decision as to his defense. *See*, e.g., *Fratta v. Quarterman,* 536 F.3d 485, 507 n.15 (5th Cir. 2008) (habeas granted under R*oberts*, but at retrial *Crawford* will apply). This avoids the result advocated by the state in its brief, that a defendant who is wrongfully convicted based on the constitutional law at the time of the state court action, to which he appropriately objects, is without any opportunity for a truly fair trial when that constitutional law is changed during the pendency of his efforts to obtain justice.

## II. THE STATE COURT PROCEEDING WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS, IN LIGHT OF THE EVIDENCE PRESENTED

The bulk of Linton's argument on this issue is set out in his merit brief in detail, and need not be repeated here. The state responds to some of what Linton raised, and largely ignores other matters raised, thus only a limited reply is necessary.

It is beyond reasonable dispute that the state court made an unreasonable determination of facts when it held that "[t]he record reveals *no basis* for believing that John Linton had *even the slightest reason* to accuse his son falsely. To the contrary, *all* of the evidence at trial established that John Linton and his son enjoyed a close and harmonious relationship *throughout the course of John's life*." Alaska Court of Appeals decision, SR Tab 38 (emphasis added).

The state's response does not call the error of this assertion into dispute. The state ignores the central aspect of Linton's claim, and argues only that there were some reasons for the court's conclusion that John would not wanted to have falsely accused his son. [State brief, pp. 37-41.]

The state is silent as to the real issue, which was that the state court was objectively unreasonable when it concluded that the trial record could *only* be read to support one conclusion. This finding was unreasonable, based on the record of the trial. The record at trial showed that, according to Pieroni, John was afraid of Lance Linton, and that he was controlled by Lance Linton. [*See* Linton's opening brief, pp. 39-40, and Tr. 875, 957-58, at Docket 123, Tab 39.] These are certainly reasons to make a false accusation. Furthermore, in relation to the inconvenient fact repeatedly ignored both by the Alaska courts and by the state's brief, John had also written out a detailed letter stating that Elfriede was gone not because she had been murdered, but because she had taken off with some guy in a truck. [SSR Tab 52.] The writing of that letter, alone, connected John to the problem of what happened to Elfriede, and that connection certainly gave him a powerful motive to make a false accusation. The Court of Appeals was clearly and objectively unreasonable in stating "[t]he record reveals *no basis* for believing that John Linton had *even the slightest reason* to accuse his son falsely . . . ." *Linton v. State*, 880 P.2d at 129. [SR Tab 38, p. 9]

The state asserts that there was no "highly probative" evidence that the court of appeals overlooked or ignored. [State brief, p. 33.] Certainly John Linton's hand-written note [SSR Tab 52] is "highly probative" of the fact that he either lied when he wrote it, or lied when he spoke to Pieroni, or that he never spoke to Pieroni at all – and it is certain that the Court of Appeals ignored it because it was never mentioned in the decision.[14] It is also highly probative regarding the possibility that John Linton had a motive to make a false statement.

---

[14]   John wrote:  *"Your ex-spouse came over to my place about 7 this morning + said she had a ride to the lower 48 and was taking off.  She said she was tired of baby-sitting + I could have the job.  So, I took the kids over to my place until you get home."*  [SSR Tab 52.]

The state is in error is arguing that "John's statement cannot be fairly characterized as an exculpatory statement by an accomplice to murder." [State's brief, pp. 33-37.] Even the Alaska Court of Appeals recognized that John Linton's alleged statement was akin to "the confession of an accomplice implicating a criminal defendant." *State v. Linton*, 880 P.2d 123, 129 (Alaska 1994), at SR Tab 38. The facts defining John's alleged statement as that of an accomplice are set out in Linton's opening brief, Docket 123, pp. 36-44.

The state is in error in arguing that the state court was objectively unreasonable in describing John's statement as "spontaneous". [State brief, pp. 46-51.] The state devotes pages to discussing the relationship between spontaneity and reliability, but the fact remains that there was a period of *more than seven years* between the time of Elfriede's alleged murder and the time of John Linton's alleged statement. The state speculates that John spoke as a spontaneous expression of guilt and remorse, but that is only one of a number of explanations that could have accounted for John's alleged statement, including anxiety about his own participation in events, possibly including a murder, that included his writing a lengthy and completely inconsistent statement about what had happened to Elfriede.

The fact that John Linton was upset when he allegedly spoke does not mean his statement was "spontaneous." *Winzer v. Hall*, 494 F.3d 1192, 1199-00 (9th Cir. 2007) (the fact that the declarant was upset when she spoke does not mean she did not have a chance to reflect and decide on what she would say and how she would act, when more than five hours had passed in the interval between the event she was describing and her statement).

The state's reliance on *Dutton v. Evans*, 400 U.S. 74 (1970), is misplaced. There, the declarant made a statement to another person directly after returning from his own indictment. This

statement was made in response to the immediate experience which the declarant had just had. Furthermore, the decision itself appears to turn upon the fact that the statement that was made was neither "crucial" nor "devastating" evidence at the trial, but in fact was close to irrelevant. 400 U.S. at 87. Had this statement been of greater import to the prosecution, it is unlikely that the same conclusion would have been reached. *See* concurring opinion of Justice Blackmun, 400 U.S. at 90 ("The single sentence attributed in testimony [by the petitioner] . . . was, in my view and in the light of the entire record, harmless error if it was error at all . . . .").

The state court relied on an objectively unreasonable determination of the facts, in light of the evidence that was presented to the trial court. The state court failed to actually apply the presumption of unreliability that is required in evaluating a statement that incriminates another, made by an accomplice. Although John's statement shifted the entirety of the blame for the murder onto Lance, the state court concluded that ". . . there was no indication that he attempted to minimize his own role or shirt blame." The court failed to consider the totality of circumstances, apparently ignoring all of the circumstances that called the reliability of John Linton's alleged statement into question. The state court ignored the evidence that John was intoxicated, that he was an accomplice, that he had suffered a stroke, that he had been on disability for mental disorder for all of his adult life, and that he had a history of lying. The state court's decision was based on an unreasonable determination of the facts.

## III.     LINTON HAS NOT ASSERTED A NEW CLAIM

The state is in error in arguing that "Linton's brief asserts a new claim neither mentioned nor fairly presented in his amended petition and not exhausted in state court," [State brief, pp. 51-53.] The fact that Lance Linton was precluded from adequate cross-examination or

impeachment of both Stephen Pieroni and of John Linton is not a new claim on habeas. First, it supports the conclusion that the state court made an unreasonable determination of the facts, because it precluded Linton from putting forward necessary and relevant facts going to the mental state, character, and motives of both Pieroni and John Linton. Furthermore, the denial of an opportunity to make a complete factual record at the state level goes to Linton's request for an evidentiary hearing, and his request to expand the record (previously filed), to establish that Lance Linton was deprived of a full and fair opportunity to confront the alleged statement upon which his murder conviction was based.

**CONCLUSION**

Lance Linton respectfully submits that his conviction was obtained in violation of the Constitution of the United States. He asks this court to hear his plea, and to grant him the right to a fair trial.

DATED this 23rd day of April, 2010.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Averil Lerman
Staff Attorney
Alaska Bar No. 8309092
601 West 5th Avenue, Suite 800
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
averil_lerman@fd.org

<u>Certification</u>:

I certify that on April 23, 2010, a copy of the foregoing document, with attachments, was served electronically on:

Kenneth M. Rosenstein, Esq.

/s/ Averil Lerman